IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JIM L. NUNGESSER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  07-1285-WEB |
| ) | |
| JOSH M. BRYANT, ) | |
| ) | |
| Defendant/Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EMCASCO INSURANCE COMPANY, ) | |
| ) | |
| Third Party Defendant. ) | |
| ) | |

**Memorandum and Order**

Third-party defendant EMASCO Insurance Company removed this action from the Sedgwick County District Court on September 19, 2007.  Doc. 1.  The Notice of Removal alleges that removal is proper pursuant to 28 U.S.C. §§ 1441 and 1446 because the action could have been properly been brought in U.S. District court under the court's diversity jurisdiction, 28 U.S.C. § 1332.  The Notice alleges that by virtue of a Kansas Supreme Court ruling dismissing EMCASCO from an underlying tort action between Nungesser and Bryant, a third-party petition now asserted by Bryant against EMCASCO, which alleges a bad faith failure to settle the tort claim, is removable as a separate and distinct legal proceeding.  The matter is now before the court on motions to remand by defendant Josh Bryant and plaintiff Jim Nungesser.

I. *Facts*.

The court finds the following facts to be uncontroverted for purposes of the motions to remand.

1. On July 8, 2002, plaintiff Jim Nungesser and defendant Josh Bryant were involved in a serious motor vehicle accident in Wichita, Ks. Nungesser and Bryant are and were, at all material times, Kansas residents.

2. On January 6, 2003, Nungesser commenced an action in the District Court of Sedgwick County, Kansas, by filing a Petition seeking to recover damages for bodily injury and property damage alleged to have resulted from Bryant's negligence.

3. On June 11, 2003, Bryant filed a third party petition against his liability insurer, EMCASCO Insurance Company, seeking full indemnity for Nungesser's claim pursuant to K.S.A. § 60-214. Bryant alleged that EMCASCO had an opportunity to settle Nungesser's claim within the policy's limit, but it failed to accomplish the settlement because of negligence and/or bad faith.

The third party petition also asserted claims against Wesley Medical Center, L.L.C., allegedly a Delaware corporation.

4. On July 10, 2003, EMCASCO filed its Answer to Bryant's third party Petition. It also filed a counterclaim for declaratory relief against Bryant. The counterclaim alleged that the plaintiff Nungesser had submitted a proposal to defendant Bryant under which Bryant would agree to waive his defenses and consent to a judgment, which would then be collected from EMCASCO. EMCASCO alleged that the insurance policy and the common law prohibited Bryant from entering into any such agreement without its consent, and it sought a declaratory

2

judgment confirming its right to object to such a proposal and declaring its insurance coverage to be null and void and uncollectable in the event Bryant agreed to cooperate with plaintiff over its objection.

5.   On September 3, 2003, EMCASCO filed a motion to dismiss Bryant's third party claims against it.  Among other things, EMCASCO argued that Kansas law did not permit Bryant to bring suit against it before Bryant's liability had been reduced to judgment or a settlement.  At a hearing on the morning of September 12, 2003, the state district court denied EMCASCO's motion to dismiss.

6.   On the afternoon of September 12, 2003, EMCASCO filed an action ("the federal action") in U.S. District Court for District of Kansas against Bryant, Nungesser, Nungesser's wife, and two of Nungesser's insurers who claimed subrogation interests in any recovery Nungesser might obtain against Bryant.  When it filed the federal action, EMCASCO deposited its $300,000 policy limit with the Clerk of the U.S. District Court.  EMCASCO's complaint asserted two causes of action: the first seeking specific performance of an alleged oral settlement between it and Nungesser; the second seeking relief in the nature of interpleader pursuant to 28 U.S.C. § 1335.  The federal action, No. 03-4174-SAC, was assigned to the Hon. Sam Crow.

7-8.   On November 14, 2003, Nungesser and his wife filed a motion to dismiss or, alternatively, to stay the federal action.  Bryant joined in the motion.  Judge Crow granted the motion to stay, ordering that all proceedings in the federal action be stayed until final judgment was entered in the state case.  Judge Crow's order stated that EMCASCO's attempt to invoke federal jurisdiction, under the circumstances, raised "the specter of forum shopping."

9.   In September 22, 2004, in the state case, Nungesser filed a motion for partial summary

judgment seeking a determination that he had not agreed to settle or compromise his claims against Bryant prior to the filing of the action. EMCASCO and Bryant filed counter-motions seeking a summary determination that an enforceable pre-suit settlement had been achieved. If granted, EMCASCO's motion would have resulted in dismissal of the state action.

10. On November 4, 2004, all parties participated in a mediation that produced a three-way agreement. The agreement was conditional. It provided in part that if Nungesser were to prevail on his assertion that there was no pre-suit settlement, then: 1) a reasonable estimate of the damages Bryant would be found liable to pay Nungesser would be $2 million; 2) EMCASCO agreed that Bryant could confess judgment in the amount of $2 million in exchange for a covenant not to execute, without impairing any rights Bryant might have against EMCASCO, including a claim of negligence or bad faith.

11. Bryant and Nungesser also entered into an agreement between themselves which provided in part that: Bryant would confess judgment in the amount of $2 million; Bryant could pursue such claims as he may have against EMCASCO for payment of the judgment; Nungesser would indemnify Bryant for the costs to prosecute the action; Bryant would grant Nungesser a partial assignment of his contractual rights against EMCASCO so Nungesser would have standing to join Bryant as a party plaintiff against EMCASCO; Nungesser would refrain from execution on Bryant's wages or property until a final judgment were entered against EMCASCO.

12. On November 18, 2004, the state district court granted Nungesser's summary judgment motion, finding that Nungesser had not entered into a settlement contract with EMCASCO.

13. On December 1, 2004, Bryant served Nungesser with an offer to confess judgment for $2 million in the state action. Nungesser accepted the following day, and the state court entered judgment in Nungesser's favor against Bryant in the amount of $2 million.

14. On July 11, 2005, Judge Crow entered an order to disburse funds in the federal action in accordance with the parties' agreement. Pursuant to the order, the clerk disbursed $110,000 to Nungesser's insurers and $190,000 to Nungesser.

15. The same day, a jury trial of Bryant's third-party claims against EMCASCO was commenced in state court. The jury found EMCASCO had acted negligently, but did not act in bad faith. The state court entered judgment for $2 million against EMCASCO and in favor of Bryant, subject to a credit of $300,000 paid pursuant to the mediated settlement agreement.

16. EMCASCO appealed to the Kansas Supreme Court, claiming, among other things, that Bryant's third party petition had been filed prematurely. The Kansas Supreme Court agreed, finding that "an insured's action against his or her insurer for negligent or bad faith failure to settle a case must wait for the liability of the insured to be decided. A defendant in an auto liability case may not sue his or her insurer on such claims until the tort claim against him or her has been reduced to judgment." The Court said that although K.S.A. § 60-214(a) [similar to Federal Rule 14] provided a *procedural* basis for asserting a third party petition against a person who might be liable to the defendant for any part of the plaintiff's claim, as a substantive matter Bryant could not assert a bad faith claim until there had been a resolution of Nungesser's underlying claim against Bryant. After reviewing the law of various jurisdictions, the Court stated that "we do not intend to be the first and only court in the country to permit an insured to implead his or her insurer to litigate its negligence or bad faith in failing to settle while the

5

underlying liability of the insured is unresolved." In sum, the Court said, the district court erred by not granting EMCASCO's motion for dismissal of the third party petition. The Court said it could not determine how EMCASCO's presence in the case had altered subsequent events, and as a result the jury's verdict and the $2 million judgment must be vacated and the mediation agreement declared "null and void." Lastly, the Court said the district court was correct insofar as it found that Nungesser and EMCASCO had not made a binding settlement prior to the filing of the lawsuit. The case was remanded to the state district court for further proceedings.

17. On July 12, 2007, after a journal entry on the Supreme Court's mandate, Nungesser, Bryant and EMCASCO participated in a second mediation, and they entered an agreement under which EMCASCO again consented that Bryant could confess judgment in favor of Nungesser without prejudicing Bryant's right to pursue an excess claim against EMCASCO or his right to assign such a claim.

18. Nungesser has agreed to permit Bryant to continue to pursue his third party claims against EMCASCO and has covenanted not to execute on Bryant's wages or property, except his rights against EMCASCO, if and while Bryant diligently prosecutes his third party claims in this action and on appeal.

19. On August 17, 2007, the state district court entered an order simultaneously granting Bryant leave to file a third party petition against EMCASCO and granting Nungesser a judgment against Bryant for $2 million and costs minus the $300,000 previously paid by EMCASCO.

20. On September 11, 2007, Bryant served his (second) third party petition on EMCASCO.

21. On September 19, 2007, EMCASCO filed its Notice of Removal removing the action

to this court.  At the same time, EMCASCO filed a motion asking Judge Crow to lift the stay of the previously-filed federal action.

22.  On November 19, 2007, Judge Crow denied a motion by EMCASCO to lift the stay in the federal action,  03-4174-SAC.

23.  Nungesser and Bryant are not represented by the same attorneys.  Bryant is represented by Jeffery Carmichael, while Nungesser is represented by Jacob Graybill, Russell Hazlewood, and David Crockett.  There is no overlapping representation.

24.  There is no fee-sharing arrangement between Nungesser's and Bryant's counsel. The previous fee-sharing arrangement referred to by EMCASCO was contingent upon a fee award being upheld by the Kansas Supreme Court, which did not occur.

II.  *Summary of Motions to Remand*.

Defendant Bryant argues the case was improperly removed for the following reasons. First, he contends complete diversity is lacking because both he and plaintiff Nungesser are citizens of Kansas.  Second, he argues the right of removal is only granted to a defendant and that a third-party defendant such as EMCASCO does not have a right to remove a diversity case. Third, Bryant argues the case was commenced in state court more than one year ago, and thus removal under § 1446(b) is prohibited.  Finally, Bryant argues EMCASCO waived any right to removal by filing an answer and counterclaim and prosecuting motions and an appeal in the state courts.

Plaintiff Nungesser's motion to remand includes the foregoing arguments and further argues that EMCASCO is wrong insofar as it claims this is a "new and separate lawsuit" from the original claim by Nungesser.  He points out that EMCASCO was brought into the case by

way of a third party complaint, and he contends none of EMCASCO's "separate lawsuit" cases deal with third party defendants.

EMCASCO argues that this "post-judgment contract litigation ... is not an ancillary proceeding in a state tort case, but a new lawsuit which is independently removable." Doc. 13 at 1. It says removal cannot be avoided by the "collusive entry of an order misdescribing the new litigation as a third-party proceeding," and it characterizes the defendant's petition as a "transparently collusive sham third-party pleading." It argues that the Kansas Supreme Court's decision "prohibited Bryant from pursuing contract relief against EMCASCO by way of third-party practice" and that the Court "repeatedly emphasize[d] that any litigation against EMCASCO is to proceed as a separate lawsuit following the entry of final judgment" in the state tort case. It says the Supreme Court ruled Bryant's contract claim "does not arise" until a final determination of the tort claim, including the resolution of any appeal, which shows that Bryant's bad faith claim is completely separate from the tort action by Nungesser. It thus argues the state district court was without jurisdiction to entertain the third-party petition.

EMCASCO contends that once the instant suit is recognized as independent and separate from Nungesser's claims, the motion for remand necessarily fails. It argues that complete diversity exists between itself and Bryant, and that Nungesser's citizenship is irrelevant. It contends Nungesser does not have standing – because he does not assert a claim against EMCASCO – but that even if he did, he should be considered a plaintiff along with Bryant because their interests are aligned. EMCASCO does not challenge the case law holding that a third-party defendant cannot remove a case, but argues it is not truly a third-party defendant because Bryant's claim is a separate and independent action. EMCASCO contends removal is

8

not barred by the one-year time limit in § 1446(b), because the re-filed petition of Brant is a separate proceeding and is subject to a new set of deadlines. Lastly, EMCASCO argues it has done nothing to waive its right to remove the proceedings.

    III. *Discussion*.

Federal removal jurisdiction is statutory in nature and is to be strictly construed. *See Shamrock Oil & Gas v. Sheets*, 313 U.S. 100, 108-09 (1941). "There is a presumption against removal jurisdiction," and doubtful cases must be resolved in favor of remand. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.1995). *See also American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951) (removal jurisdiction of the federal courts "is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties").

The disposition of the instant motion boils down to a rather simple question: is Bryant's bad faith claim against EMCASCO part of the same "civil action" as Nungesser's tort action against Bryant? *See* 28 U.S.C. § 1441(a); 1446(b). If it is, then removal would clearly be barred by (among other things) the one-year time limit in § 1446(b). If the bad faith claim is a separate "civil action" within the meaning of §§ 1441 and 1446, however, then the removal was not only timely, but it is otherwise proper under § 1441(a) and (b).

A bit of background on the Kansas law pertaining to bad faith claims is needed to address this issue. In *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969), the injured plaintiff obtained a judgment against the defendant-insured in excess of the insured's policy limits. An order of garnishment was then issued against the defendant's insurance company for the excess

9

judgment, based on allegations that the insurer acted in bad faith in settlement negotiations.[1] The insurer denied liability. After a hearing, the district court found the insurer did not act in bad faith. The Kansas Supreme Court affirmed that ruling on appeal, but made clear that an insurer owes a duty to act in good faith in defending and settling claims against the insured, and if it breaches that duty it may be held liable for the full amount of the insured's loss, even if that amount exceeds the insured's policy limits. In *Gilley v. Farmer*, 207 Kan. 536, 485 P.2d 1284 (1971), the Court said a bad faith claim arises in part from the insurer's implied contractual obligation to the insured to act in good faith and with reasonable care for the interests of its insured, and it reiterated the propriety of asserting a bad faith claim in a garnishment proceeding.[2] The Court stated that under the principle of *Bollinger*, the insured (Farmer) could have maintained an action against his insurer for bad faith, and that Gilley, as the judgment creditor, stood in the place of the insured and could properly assert the bad faith claim in garnishment. Since these cases were decided, nearly all claims of bad faith against an insurer in Kansas appear to have been asserted by way of garnishment proceedings initiated after judgment on the underlying tort claim.

---

[1] Under Kansas law, garnishment is a procedure whereby property of a judgment debtor can be seized or attached pursuant to court order. K.S.A. § 60-731. As an aid to the collection of a judgment, an order of garnishment may be obtained at any time after 10 days following judgment. § 60-731. An order of garnishment has the effect of attaching any property or indebtedness belonging to or owing the judgment debtor that is under the control of the garnishee. § 60-732. The order must be served upon the garnishee, § 60-732, and subsequently upon the judgment debtor. § 60-735. The latter parties have a limited time to answer or otherwise object and request a hearing. The court, upon determination of the issues framed by the pleadings, is required to enter judgment fixing the rights and liabilities of all the parties in the garnishment proceeding. § 60-721.

[2] Under Kansas law, moneys "on a claim not arising out of contract" are exempt from garnishment. K.S.A. § 60-724.

The removal of such bad faith garnishment claims has been previously addressed in this district.  In *Bridges by Bridges v. Bentley by Bentley*, 716 F.Supp. 1389 (D. Kan. 1989), the insurer removed the action, claiming the existence of diversity jurisdiction between the plaintiff judgment creditor and the insurer-garnishee.  The plaintiff moved to remand, arguing diversity was lacking because the defendant-insured in the underlying tort action was a resident of Kansas.  Judge Crow found removal was nevertheless proper under § 1441(a) and (b) because the garnishment action was an independent and original civil action, separate and distinct from the primary liability action.  He noted there was a substantial divergence of authority on the issue, but concluded the garnishment action was "a suit involving a new party litigating the existence of a new liability."  *Id*. at 1392.  Judge Crow also pointed out that the Tenth Circuit reached substantially the same result in *Adriaenssens v. Allstate Ins. Co.*, 258 F.2d 888 (10th Cir. 1958).

Similarly, in *Smotherman v. Caswell*, 755 F.Supp. 346 (D. Kan. 1990), Judge Van Bebber found that a garnishment proceeding against an insurer was a distinct civil action for purposes of § 1441(a) and therefore properly removable.  He noted that the characterization of the proceeding as a separate action for purposes of removal was a question of federal law, although he said Kansas law similarly treated garnishments as distinct actions by requiring an independent judgment in the garnishment proceeding.  Judge Van Bebber went on to conclude that removal of the action was not barred by the time limits in § 1446(b), because the separate and distinct nature of garnishment meant the relevant time period started to run from commencement of the garnishment proceeding, not from service of the complaint in the underlying tort action.  *Id*. at 349.

Although the instant case stands on a different procedural footing than the above

garnishment actions, the principles expressed in those cases and the Kansas Supreme Court's ruling requiring dismissal of Bryant's third-party petition lead this court to a similar conclusion – namely, that Bryant's claim against EMCASCO must be considered a distinct "civil action" for purposes of § 1441(a) and (b).  The court recognizes that Bryant's bad faith claim is asserted by way of a third-party petition filed in the underlying tort action, rather than by way of a garnishment proceeding by Nungesser.  And most federal courts have determined that third party defendants do not have the right to remove a case under § 1441.  *See Elkhart Co-Op Equity Exchange v. Day*, 716 F.Supp. 1384 (1989);  *Right of Third Party Defendant to Removal of Action from State to Federal Court under 28 U.S.C. § 1441*, 8 A.L.R. Fed. 708 (1971).  But in determining whether removal jurisdiction is proper, this court is not bound by the labels attached by state practice.  Congress intended the removal statute to be uniform in its nationwide application, and the removal statute thus sets its own criteria, irrespective of local practice, for determining what suits may be removed.  *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).  At the same time, this does not mean the State's practice and procedure is irrelevant.  The state court's characterization of the action is a factor this court can consider in determining whether a civil action is separate for purposes of removal.  *See Scanlin v. Utica First Ins. Co.*, 426 F.Supp.2d 243, 248 (M.D. Pa. 2006).

      The court is not persuaded that the distinction between the instant case and the garnishment actions in *Bridges* and *Smotherman* is material insofar as removal is concerned.  The Kansas Supreme Court in *Nungesser* made clear that when the tort action against Bryant was filed, Bryant had no bad faith claim and could not implead or assert a third-party complaint against EMCASCO.  It said Bryant could not sue EMCASCO on such claims "until the tort

claim against him ... has been reduced to judgment." *Nungesser*, 283 Kan. at 558. *See also id*. at 560 (stating the issue is whether it was "permissible for Bryant's third-party suit against EMCASCO to proceed before the underlying tort action brought by Nungesser had concluded"). The Supreme Court found it was error to allow the insurer to be brought into the same proceeding. Under these unique circumstances, the state Supreme Court has already determined that Bryant's bad faith claim could not be joined as a third-party complaint in the same action with Nungesser's tort claim. Whatever case label one may attach to the current post-judgment petition, one thing is clear: the Supreme Court required the bad faith claim to be brought as a separate action. It declared the joinder of the claims improper and effectively severed the bad faith claim from the tort action. Under these circumstances, the court concludes EMCASCO has met its burden of showing there is no possibility that Bryant could establish a cause of action against it in the tort action.[3] Under the "egregious joinder" or "fraudulent misjoinder" doctrine, then, this court will disregard Bryant's purported joinder of the claims, and will treat the bad faith claim as a separate civil action. *See Central of Georgia Ry. Co. v. Riegel Textile Corp.*, 426 F.2d 935, 938 (5th Cir. 1970) (indemnity claim that was severed from main action "treat[ed] the case as two lawsuits" and was properly removed; federal court should recognize that a party in this position "is as much a 'defendant' as if an original action had been brought against him."). *Cf. Federal Ins. Co. v. Tyco Int'l. Ltd.*, 422 F.Supp.2d 357, 378-88 (S.D.N.Y. 2006) (finding no fraudulent misjoinder where the state court had "explicitly invit[ed] the impleader of" the third-

---

[3] Bryant contends that any allegations of fraudulent joinder on EMCASCO's part were waived by its failure to include such allegations in the Notice of Removal. The court can find no waiver, however, because the Notice of Removal clearly included EMCASCO's contention that the bad faith claim is a separate action from the prior tort action.

13

party defendant).

Just as in a garnishment situation, the bad faith claim did not exist until liability in the tort action had been reduced to final judgment.  And just as in a garnishment situation, Bryant's bad faith cause of action is "a suit involving a new party and litigating the existence of a new liability."  *Bridges*, 716 F.Supp. at 1392.  The entry of judgment on Nungesser's claims shows the tort action was in fact concluded, and that the subsequently filed bad faith claim against EMCASCO was a separate civil action, notwithstanding the state district court's allowance of the third-party petition under the same case number.  In either event – whether such a claim is asserted by garnishment or by a post-judgment third-party complaint – it is separate from the tort action concerning the injuries suffered by the plaintiff.  Moreover, the fact that the instant claim was asserted by Bryant, the defendant in the tort action, rather by the judgment creditor Nungesser, does not materially distinguish this case from the garnishment cases.  Insofar as the claim of bad faith is concerned, the interests of Nungesser and Bryant are aligned, and the distinction between a claim by Bryant or, alternatively, by Nungesser via garnishment, is one of form but not substance insofar as removal is concerned.  The election of one or both of these parties to assert a bad faith claim does not alter the conclusion that the federal law considers the claim to be a separate civil action for purposes of § 1441(a) and (b).

The court thus proceeds to examine the diversity question from the perspective of the bad faith claim as a separate action.  "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants.  It is our duty ... to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" *Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 8, n. 5 (1989).  "The court must determine the

'principal purpose of the suit,' and 'the primary and controlling matter in dispute' and properly align the parties according to their interest. *Liebau v. Columbia Cas. Co.*, 176 F.Supp.2d 1236, 1243 (D. Kan. 2001) (*quoting City of Indianapolis v. Chase Nat. Bank of the City of New York*, 314 U.S. 63 (1941). So viewed, the court concludes that Mr. Bryant must be considered the plaintiff in the action and EMCASCO as the defendant. *Cf. Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954) ("For the purpose of removal, the federal law determines who is plaintiff and who is defendant."); *Mason City & Ft. D.R. Co. v. Boynton*, 204 U.S. 570 (1907) (examining nature of condemnation proceeding and concluding that "in a broad sense, the railroad is the plaintiff, as the institution and continuance of the proceedings depend upon its will."). As such, EMCASCO qualifies as a "defendant" within the meaning of § 1441(a). Because Mr. Bryant is a plaintiff on the claim of bad faith, his Kansas residency does not preclude removal under § 1441(b). *See id* (diversity action only removable if none of the parties properly joined and served as defendants is a citizen of the forum state). To the extent Mr. Nungesser has a stake in the action, his interests are in substantial alliance with Bryant's, and he will therefore be considered a plaintiff on the claim. *See Liebau*, 176 F.Supp.2d at 1243 (parties were aligned in interest against insurance company). Under such an alignment, there is no question but that diversity jurisdiction under § 1332 currently exists and was present upon removal of the action.

As Judge Van Bebber's ruling in *Smotherman* made clear, the characterization of the bad faith claim as a separate action necessarily means it is the service of the pleading alleging the bad faith claim that triggers the time limits in § 1446(b). Under that standard, removal of the instant case was timely. EMCASCO removed the action within 30 days of receipt of service of

Bryant's petition.  As for the one-year time limit of § 1446(b), that provision applies only to cases where the case stated by the "initial pleading" is not removable.  Under the ruling of *Smotherman*, the petition alleging bad faith is considered the "initial pleading" (as well as the "commencement of the action") for purposes of § 1446(b).  In this instance, the case stated by Bryant's "initial pleading" against EMCASCO was removable and was timely removed.

Lastly, the court rejects the argument that EMCASCO waived its right to remove the action by virtue of its conduct in the state litigation.  As Judge Robinson stated in *Vandeventer v. Guimond*, 494 F.Supp.2d 1255, 1261-62 (D. Kan. 2007), for such a waiver to occur it must have been "unequivocally apparent" that the case was removable before the defendant engaged in the litigation conduct, the intent to waive the right to remove to federal court and to submit to state court jurisdiction must have been "clear and unequivocal," and the defendant's actions must have been inconsistent with the right to remove.  When EMCASCO litigated in the state court, it did so by virtue of having been erroneously brought into the tort action by Mr. Bryant.  It was by no means "unequivocally apparent" at that point that the action was removable, given that diversity jurisdiction was clearly not present as to the tort claim.  In fact, it appeared that the action was not removable at that point, since both claims were litigated as part of the same action.  The removable character of the bad faith claim only became apparent following remand from the Supreme Court and after entry of judgment on the underlying tort claim and service of the third-party petition.  EMCASCO did nothing after that point to constitute a waiver of the right to remove the case.

16

IV.  *Conclusion*.

Defendant Bryant and Plaintiff Nungesser's Motions to Remand (Docs. 7, 9) are hereby DENIED.  IT IS SO ORDERED this   7th    Day of December, 2007, at Wichita, Ks.

              s/Wesley E. Brown
              Wesley E. Brown
              U.S. Senior District Judge